# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THORNELL BROWN, | CASE NO. 1:09-cv-00792-LJO-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING UNENUMERATED 12(b) MOTION AND GRANTING IN PART THE 12(b)(6) MOTION TO DISMISS |
| v. | |
| R. J. WILLIAMS, et al., | |
| Defendants. | (Doc. 16) |
| / | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations - Defendant's 12(b)(6) Motion**

**I.     Procedural History**

Plaintiff Thornell Brown ("Plaintiff") is a state prisoner proceeding in forma pauperis ("IFP") in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed May 4, 2009, against Defendants Williams and Gonzales ("Defendants") for use of excessive force and subjecting Plaintiff to unconstitutional conditions of confinement following the use of force on May 23, 2005, in violation of the Eighth Amendment. (Doc. 1, Comp.; Doc. 8, Cog Claim Ord.).

On May 6, 2010, Defendants filed a request for judicial notice, an unenumerated 12(b) motion to dismiss pursuant to 28 U.S.C. §1915(g) and a 12(b)(6) motion to dismiss on grounds of qualified immunity. (Docs. 16, 17). On December 20, 2010, Plaintiff filed an opposition to Defendants' motions. (Doc. 32). Defendants have not submitted a reply within the time allotted under local rules. The matter is submitted pursuant to Local Rule 230(1).

1

## II. Motion to Dismiss Standard

'The focus of any Rule 12(b)(6) dismissal . . . is the complaint.' *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979-80 (9th Cir. 2007) (quoting *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 129 S.Ct. at 1949-50. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Additionally, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

## III. Three Strikes Pursuant to 28 U.S.C. §1915(g)

Section 1915 of Title 28 of the United States Code governs proceedings in forma pauperis. Section 1915(g) provides that:

> [i]n no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).[1]

Defendants request the Court take judicial notice of dispositions of civil cases filed by Plaintiff. (Doc. 17). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). The Court takes judicial notice of Plaintiff's court records in previous cases. Fed. R. Evid. 201(d); *see United States v. Howard*, 381 F.3d 873, 876 n.1

---

[1] "This subdivision is commonly known as the 'three strikes' provision. 'Strikes' are prior cases or appeals, brought while the plaintiff was a prisoner, which were dismissed 'on the ground that [they were] frivolous, malicious, or fail[ ] to state a claim' are generically referred to as 'strikes.' Pursuant to § 1915(g), a prisoner with three strikes or more cannot proceed [in forma pauperis]." *Andrews v. King*, 398 F.3d 1113, 1116 n.1(9th Cir. 2005).

2

1  (2004). Defendants argue that the following cases constitute as strikes: *Brown v. Galaza, et al.*, 1:98-cv-05156-AWI-HGB (E.D. Cal. dismissed July 31, 2000); *Brown v. Valenzuela*, 2:07-cv-02842-ODW-PJW (C.D. Cal. dismissed June 15, 2007); *Brown v. Renteria*, 2:02-cv-04625-SVW-PJW, 2006 WL 4389588 (C.D. Cal., dismissed November 17, 2006); *Brown v. Gandola*, 2:03-cv-05867-SVW-PJW (C.D. Cal., dismissed July 19, 2007); *Brown v. Macias*, 2:04-cv-05384-SVW-PJW (C.D. Cal., dismissed August 10, 2007); *Brown v. Macias*, No. 05-55782 (9th Cir., dismissed August 9, 2005).

A review of the record of actions filed by Plaintiff in the United States District Court reveals that Plaintiff filed two actions that clearly count as "strikes" pursuant to § 1915(g). *See Brown v. Galaza, et al.*, 1:98-cv-05156-AWI-HGB (E.D. Cal.) (dismissed July 31, 2000, for failure to state a claim, Doc. 25); *Brown v. Valenzuela*, 2:07-cv-02842-ODW-PJW (C.D. Cal.) (dismissed June 15, 2007 for failure to state a claim, Docs. 5, 8). However, "[n]ot all unsuccessful cases qualify as a strike under § 1915(g)." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005); *see O'Neal v. Price*, 531 F.3d 1146, 1152-53 (9th Cir. 2008). Only "after careful evaluation of the order dismissing an action, and other relevant information, [does the Court] determine[] that the action was dismissed because it was frivolous, malicious or failed to state a claim." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).

In *Renteria*, Plaintiff had stated a claim, however, the court granted the motion for summary judgment upon finding that the amount of force was not excessive given the circumstances. *Brown v. Renteria*, 2:02-cv-04625-SVW-PJW (Doc. 128). Therefore, the Court finds that *Renteria* does not count as a strike. Further, the Court finds that *Brown v. Macias* does not count as a strike. *See Brown v. Macias*, 2:04-cv-05384-SVW-PJW, (C.D. Cal., dismissed August 10, 2007). In *Brown v. Macias*: 1) two claims were dismissed for failure to state a claim; 2) one due process claim was not cognizable under section 1983 since it necessarily challenged the length of Plaintiff's sentence; 3) one claim was dismissed upon a finding that there was due process (Defendants do not explain why this claim should be deemed as frivolous, malicious or failing to state a claim); 4) Plaintiff's retaliation claim was dismissed because Plaintiff failed to establish that his First Amendment Rights were chilled (Defendants do not explain why this claim should be deemed frivolous, malicious or

3

failing to state a claim); 5) one Eighth Amendment claim was transferred to another case; and 6) another Eighth Amendment claim was denied because there was no evidence that Plaintiff was placed in the Secured Housing Unit ("SHU") where the defendants worked. *Brown v. Macias*, 2:04-cv-05384-SVW-PJW (Doc. 82). Although on page fourteen of the findings and recommendations, there is a heading titled "Plaintiff's State Law Claim is Subject To Dismissal Because His Federal Claims Are Not Cognizable," such title is not sufficient to establish that the action was dismissed for being frivolous, malicious of failing to state a claim. *See Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).

In *Brown v. Gandola*: 1) the official capacity claims were dismissed based on absolute immunity, thus failed to state a claim; 2) "Claim V" was dismissed for failure to exhaust administrative remedies; 3) Plaintiff's Due Process "Claims I-III" were denied based on a failure to establish protected liberty interests and additionally, Plaintiff received due process (Defendants do not explain why these claims should be deemed as frivolous, malicious or failing to state a claim); and 4) Plaintiff's claim of deliberate indifference to due process violations that occurred at the disciplinary hearings could be deemed as dismissed for failing to state a claim.

For the trial actions in *Macias* and *Gandola* described above, Defendants have not cited any authority to support the contention that dismissing a "mixed action," where some of the claims are frivolous, malicious, or failed to state a claim while other claims are not, should count as a strike. In fact, the law suggests the opposite. *See* 28 U.S.C. § 1915(g) (stating that a strike is an "action" (rather than a claim) that has been dismissed as frivolous, malicious or for failing to state a claim); *Lira v. Herrera*, 427 F.3d 1164, 1171-72 (9th Cir. 2005) (interpreting "action" in the PLRA and its application in "mixed actions" of exhausted and unexhausted claims, noting that "actions" are treated in their entirety as juxtaposed to individual claims ). Therefore, the Court finds that the trial actions of *Macias* and *Gandola* do not count as strikes since they contained at least one claim that is not frivolous, malicious or failed to state a claim.

The Ninth Circuit has left open the possibility that a dismissal for lack of jurisdiction or other procedural defects may constitute as a strike. *O'Neal v. Price*, 531 F.3d 1146, 1155 n.9 (9th Cir. 2008). However, Defendants have failed to demonstrate how the appellate dismissal in *Brown v.*

*Macias* constitutes a strike. In *Brown v. Macias*, Plaintiff appealed the denial of his motion for reconsideration of the court's denial of default judgment in Plaintiff's favor. *Brown v. Macias*, 2:04-cv-05384-SVW-PJW, (Docs. 34, 35, 36, 37, 44, 45); *Brown v. Macias*, No. 05-55782 (9th Cir., dismissed August 9, 2005). Defendants fail to cite any authority as to why an appellate dismissal for lack of jurisdiction in this circumstance should be deemed as frivolous, malicious of as failing to state a claim.

Since Plaintiff does not have three strikes, the Court recommends that Defendant's unenumerated 12(b) motion to dismiss pursuant to § 1915(g) be denied.

**IV.     Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), overruled on other grounds by *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)). In applying the two-part qualified immunity analysis, it must be determined whether, "taken in the light most favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation." *McSherry v. City of Long Beach*, 560 F.3d 1125, 1129-30 (9th Cir. 2009). These prongs need not be addressed by the Court in any particular order. *Pearson*, 129 S.Ct. at 818. "A negative answer [of either prong] ends the analysis, with qualified immunity protecting the defendants from liability." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).

**A.     Excessive Force**

**1.     Facts**

For the purposes of resolving this motion to dismiss, the Court accepts Plaintiff's version of events set forth in his complaint as true. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). On April 25, 2005, facility 4B at Tehachapi State Prison was placed on lock down due to the attempted murder of a prison employee by several Mexican and Asian inmates. (Doc. 1, Compl. at 10-11). Between April 25, 2005 to August 22, 2005, Black and Mexican inmates were not allowed outside

5

their assigned cells without being in handcuffs or escorted by at least two correctional officers. *Id.* at 11. During the course of this lock down period, all inmates were required to undergo an unclothed body search before exiting their cells and all of the cells and common areas were searched for dangerous contraband. *Id.* at 11-12. Plaintiff's cell was searched at least two times by a prison staff search team. *Id.* at 12.

On May 23, 2005, after returning to his cell from the prison's law library, Defendants Williams and Gonzales told Plaintiff that they needed to cuff Plaintiff and his cell-mate in order to carry out a cell search. *Id.* at 12-13. Plaintiff and his cell-mate took turns approaching the cell door stating that they would comply with the orders after they got a chance to speak to Sergeant S. Sanchez. *Id.* at 13. Defendant Williams responded by aggressively demanding that Plaintiff and his cell-mate undergo a full unclothed body search or else they would get pepper sprayed. *Id.* at 13. Plaintiff and his cell-mate complied with the unclothed body search order. *Id.* at 14. After the unclothed body search, Plaintiff and his cell-mate again requested to speak with Sergeant Sanchez. After Defendant Williams ignored their renewed request, Plaintiff and his cell-mate walked away from the cell door. Plaintiff returned to doing legal work and his cell-mate laid on his bed. *Id.* at 14. Defendants Williams and Gonzales "misconstrued Plaintiff['s] and [the cell mate's] no[n] immediate threat protest, as a[n] act of disobeying a direct order." *Id.* at 14-15. After Plaintiff's cell-mate stated again that he would comply with the random cell search after he spoke to Sergeant Sanchez, Defendant Gonzales persuaded Defendant Williams to open the door slot and deploy a T-16 expulsion pepper spray grenade device in Plaintiff's cell. *Id.* at 15. The pepper spray device rolled to the middle of the cell and emitted "thick noxious pepper spray fumes that saturated the entire cell." *Id.* at 15-16.

**2. Analysis**

In addressing whether there is a clearly established right "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) (quoting, *Saucier*, 533 U.S. at 201-02). "This is not to say that an official action is protected by qualified immunity unless the

6

very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). "If the only reasonable conclusion from binding authority were that the disputed right existed, even if no case had specifically so declared, prison officials would be on notice of the right and would not be qualifiedly immune if they acted to offend it." *Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir.1997).

The issue here is whether there is a clearly established right for prisoners to be free from pepper spray in cases of admitted disobedience of lawful orders where prisoners were forewarned that pepper spray would be used to gain compliance. Specifically, would it be clear to a reasonable officer that after first giving warning that failure to comply with an order will result in the use of pepper spray, followed by administering a pepper spray grenade would be unlawful where two prisoners were engaged in a "no[n] immediate threat protest" of an officer's lawful order to cooperate with a cell search. There is little Supreme Court and Ninth Circuit published precedent that addresses the use of chemical agents to maintain prison discipline, let alone the use of chemical agents to establish compliance with a lawful order. *See Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979) (finding that use of small amounts of tear gas may be a necessary if a prisoner refuses to comply with a lawful order and after adequate warning to the prisoner); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (finding that there was not excessive force to use pepper spray to break up a fight between prisoners). The Ninth Circuit's unpublished cases tend to support the lawfulness of using chemical agents to gain compliance with a lawful order once a prisoner has been forewarned that chemical agents will be used if a prisoner continues to disobey the order. *See Eccleston v. Oregon ex rel. Oregon Dept. of Corrections*, 168 Fed.Appx. 760 (9th Cir. 2006) (finding that use of a chemical agent to extract prisoner from cell did not constituted cruel and unusual punishment where evidence demonstrated that prisoner repeatedly did not follow orders to leave his cell); *Stewart v. Stewart*, 60 F. Appx. 20, 22 (9th Cir.2003) ("[Administrators'] alleged policy of spraying prisoners with pepper spray for refusing to follow directions falls within the wide-ranging zone of deference accorded to prison officials in shaping 'prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline.'" ); *Banks v. McDonald*, 81 Fed.Appx. 227

7

1  (9th Cir. 2003) (summary judgment on prisoner's excessive force claim was proper where prisoner
2  was warned that refusing lawful orders to cuff up would result in being sprayed, prisoner was
3  sprayed six or seven times and the correctional officer stopped spraying once the prisoner complied);
4  *see also Howard v. Nunley*, No. CV-06-00191-NVW, 2010 WL 3785536, at *4-5 (E.D. Cal., 2010)
5  (discussing the variance of federal case law across jurisdictions and ultimately concluding that there
6  was not a clearly established right for a prisoner to be free from pepper spray when disobeying a
7  lawful order); *cf. Vlasich v. Reynoso*, 117 F. Appx 568, 569 (9th Cir. 2004) (finding "a reasonable
8  inference of wanton infliction of pain in violation of the Eighth Amendment" at the motion to
9  dismiss phase where officers still administered pepper spray after compliance rather than
10 administering pepper spray in order to gain compliance).

11         Plaintiff describes that security measures had increased in his facility at Tehachapi State
12 Prison, a maximum security prison, as a result of an attempted murder on a prison staff member.
13 Within this context, correctional officers were increasing cell searches and strip searches to ensure
14 against prisoners having dangerous contraband. Plaintiff states that the Defendants warned Plaintiff
15 and his cell-mate that their refusal to comply would result in the use of tear gas and Plaintiff admits
16 to willfully disobeying the lawful order of the officers. "The use of mace, tear gas or other chemical
17 agent of the like nature when reasonably necessary to . . . subdue recalcitrant prisoners does not
18 constitute cruel and inhuman punishment." *Soto v. Dickie*, 744 F.2d 1260, 1270 (7th Cir. 1984); *see*
19 *also Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979) ("use of . . . tear gas . . . in small amounts
20 may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell
21 or upon other provocation presenting a reasonable possibility that slight force will be required");
22 *Jones v. Shields*, 207 F.3d 491, (8th Cir. 2000) (holding that correctional officer's use of a
23 pepper-based chemical spray was not "repugnant to the conscience of mankind" when used to
24 subdue a "recalcitrant prisoner" locked in his cell or in handcuffs); *Caldwell v. Moore*, 968 F.2d 595,
25 600 (6th Cir. 1992) (listing cases from various jurisdictions supporting the use of force to maintain
26 discipline in the prison context).

27         Moreover, the fact that the officers were faced with two prisoners both engaging in a "no[n]
28 immediate threat protest" amplified a situation that already posed a threat to safety and security at

the prison and made the use of physical extraction absent a chemical agent a more dangerous option. *See Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir.1996) ("because a limited use of mace constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials"); *Soto v. Dickie*, 744 F.2d 1260, 1267 (7th Cir. 1984) (discussing the unique dangers of a maximum security prison and how "refusal and denial of authority places the staff and other inmates in danger.").[2]  Prisoners do not enjoy the right to engage in a "no[n] immediate threat protest" of a lawful order nor do prisoners enjoy a right to give counter demands to officers' lawful orders. *See e.g.*, *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them."). "When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. " *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984).

Prison regulations governing the conduct of correctional officers are also relevant in determining whether an inmate's right was clearly established and whether an officer would have been on notice of the apparent unlawfulness of certain conduct. *See Hope v. Pelzer*, 536 U.S. 730, 743-44 (2002). The regulatory code for the California Department of Corrections and Rehabilitation states that "reasonable force" includes "[t]he force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable . . . *to gain compliance with a lawful order*" and that use of chemical agents is a "use of

---

[2] See also *Jimenez v. Sambrano*, No. 04cv1833, 2007 WL 4961207, at *3 (S.D. Cal. 2007), where the court found the declaration from an expert in the California Department of Corrections procedures and policies to be persuasive and "comport with common sense" where the expert stated that:
> [R]andom cell searches are an integral part of maintaining security and safety in the prison, and are performed to control contraband and discover escape risks . . . . "Plaintiff's request to speak with a supervising officer [was] not a valid basis for [a prisoner's] refusal to exit the cell and '[should] not [have] delay[ed] the cell search as it could [have] give[n] Plaintiff time to dispose of contraband he [did] not want found and he [could] talk to a supervisor following the cell search. Additionally, cells are searched continuously and stopping to call a supervisor prior to all cell searches would be onerous and a threat to security."

*Jimenez v. Sambrano*, No. 04cv1833, 2007 WL 4961207, at *3 (S.D. Cal. 2007).

force option." Cal. Code Regs., tit. 15 §§ 3268(a)(1), (c)(1) (emphasis added). Sections 3268(a)(1) and (c)(1) would not give an officer reason to believe that the use of chemical agents to gain compliance with an order to comply with a cell search would be unlawful. *See* Cal. Code Regs., tit. 15 §§ 3268(a)(1), (c)(1); *see also Nawabi v. Wyatt*, No. CV 08-04385-PSG, 2009 WL 3514849, at *6 (C.D. Cal. 2009) ("The use of force by prison officials to quell resistance or gain compliance with a lawful order is specifically authorized by Title 15 California Code of Regulations section 3268(a)(1)").

Defendants Williams and Gonzales warned Plaintiff and his cell-mate that their continued disobedience would result in the use of pepper spray. Although Plaintiff and his cell-mate eventually complied with the strip search, they renewed their disobedience with the cell search. After Plaintiff and his cell-mate continued in their "no[n] immediate threat protest," Defendants eventually used a pepper spray grenade to extract Plaintiff and his cell-mate. In light of pre-existing law, the unlawfulness of Defendants actions in this instance was not apparent. There is not a clearly established right for a prisoner to be free from pepper spray after being warned that it would be used and a prisoner continues to disobey a lawful order. Therefore, the Court finds that the Defendants are entitled to qualified immunity on the excessive force claim.

**B. Conditions of Confinement in Violation of the Eighth Amendment**

**1. Facts**

After administering the pepper spray grenade as described above, Plaintiff was handcuffed and escorted to a cell in the clinic holding area where his handcuffs were then removed. *Id.* at 17. Plaintiff remained in the holding cell for four hours without access to water or fresh moving air to reduce the prolongs exposure and effects from the pepper spray. *Id.* at 18. During this four hour period, Plaintiff continued to suffer from a burning sensation in the eyes, blistering skin, difficulty breathing, uncontrollable gagging and coughing as well as temporary digestive and vision impairment. *Id.* at 17, 18. Within the first hour of being placed in the holding cell, a registered nurse observed Plaintiff through the door window and wrote a medical report without physically examining Plaintiff. *Id.* at 18. Although Plaintiff requested to see a doctor regarding the pain and discomfort

experienced as a result of the pepper spray, the nurse ignored the request and told Plaintiff that the symptoms should have already dissipated based on the fresh moving air during the walk to the clinic holding cell. *Id.* at 19.

After four hours of being in the clinic holding cell, Plaintiff and his cell-mate were returned to their original cell which was still contaminated by pepper spray without ever being allowed a decontamination shower, clean bedding or cell cleaning supplies. *Id.* at 24. Upon return to the cell, Plaintiff and his cell-mate immediately began experiencing "uncontrollable choking, coughing, gaging, difficulty breathing, burning eyes, blistering skin and temporary digestive and vision impairment." *Id.* at 25. Plaintiff had to endure the effects of the pepper spray lingering in his cell for three hours without their symptoms dissipating. *Id.* at 25. It was not until the next day that the second watch unit staff supplied Plaintiff and his cell-mate with soap and disinfectant to clean and wash their bed linen and personal property. *Id.* at 25-26.

### 2. Analysis

"For a prisoner to establish 'cruel and unusual punishment,' he must show both an objective component, addressing whether a deprivation was sufficiently serious to be 'cruel and unusual,' and a subjective component, addressing whether correction facility officials acted with 'a sufficiently culpable state of mind,' so that the condition of confinement may be deemed to be 'punishment.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "The Eighth Amendment protects against conditions of confinement that 'involve the wanton and unnecessary infliction of pain . . . .'" *Pollard v. The Geo Group, Inc.*, --- F.3d ----, 2010 WL 5028447, at *17 (9th Cir. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Notwithstanding that Plaintiff was allowed four hours to recover in the clinic's holding cell and was observed by a nurse, Defendants may have been deliberately indifferent to the conditions of Plaintiff's confinement when Plaintiff was returned to a cell that still had pepper spray residue, was not allowed to shower until the next day, not given clean bedding until the next day and was not given cleaning supplies to remove the pepper spray residue until the next day. *See Clement v. Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002). Defendants would have been on notice of the

11

condition they created through the administration of a pepper spray grenade in a poorly ventilated cell and the need to take proper measures to ensure that the painful effects of the pepper spray would not effect Plaintiff after he was returned to his cell. *See Clement v. Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002). Taken in the light most favorable to Plaintiff, Defendants' act of allowing Plaintiff's cell to remain contaminated with pepper spray and thus forcing Plaintiff to endure "uncontrollable choking, coughing, gaging, difficulty breathing, burning eyes, blistering skin and temporary digestive and vision impairment" long after the cell extraction without any remedy until the following day would amounted to "cruel and unusual" punishment. *See Clement v. Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002). Moreover, preexisting law clearly establishes that a reasonable officer would have thought that allowing a prisoner to return to a cell which remained grossly contaminated with pepper spray would have violated a prisoner's right to be free from unconstitutional conditions of confinement. *See Clement v. Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002).

Therefore, the Court finds that the Defendants are not entitled to qualified immunity for the conditions of confinement claim.

### V.   Conclusion and Recommendation

As set forth herein, the Court HEREBY RECOMMENDS:

1. that Defendants' unenumerated 12(b) motion to dismiss pursuant to § 1915(g) be DENIED;

2. that Defendants' 12(b)(6) motion to dismiss be GRANTED IN PART to the extent that the excessive force claim against Defendants Williams and Gonzales be DISMISSED WITH PREJUDICED based on Defendants' entitlement to qualified immunity;

4. that Defendants' 12(b)(6) motion to dismiss be DENIED IN PART based on a finding that Defendants were not entitled to qualified immunity for the conditions of confinement claim.

///

///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    February 2, 2011

UNITED STATES MAGISTRATE JUDGE